<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ERNESTINE LEONARD, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 04-2737 (GEB) |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| JO ANNE B. BARNHART, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**<u>BROWN, District Judge</u>**

This matter comes before the Court upon the appeal of plaintiff Ernestine Leonard

("Plaintiff") from Commissioner of Social Security Jo Anne B. Barnhart's ("Commissioner")

final decision that Plaintiff was not eligible for Social Security Disability Insurance Benefits and

Supplemental Security Income Benefits under Titles II and XVI of the Social Security Act

("Act").  This Court, exercising jurisdiction pursuant to 42 U.S.C. § 405(g), and having

considered the parties' submissions without oral argument pursuant to FED. R. CIV. P. 78, will

deny Plaintiff's appeal.

**I.      BACKGROUND**

Plaintiff filed the instant appeal with the Clerk's office of this Court on June 14, 2004.

Plaintiff challenges the Commissioner's decision that she is not disabled and thus not entitled to

Social Security Disability Insurance Benefits and Supplemental Security Income Benefits.

Plaintiff was involved in a motor vehicle accident on June 23, 1998.  Record ("R.") at 18.  On

December 21, 1998, Plaintiff filed applications for disability benefits based on alleged sharp

pains in her neck, back, arms and legs.  R. at 71-80.  The Social Security Administration denied

Plaintiff's disability claims on July 15, 1999.  R. at 29.  A request for reconsideration of this

decision was denied on September 15, 2000.  R. at 35-38.  Plaintiff then filed, on September 21,

2000, a request for a Hearing before Administrative Law Judge Joseph M. Hillegas ("ALJ").  R.

at 39.  On May 30, 2001, the ALJ conducted a hearing in Voorhees, New Jersey to determine

whether Plaintiff was disabled and thus entitled to benefits.  See R. at 186-216.

At the hearing, Plaintiff testified that she could not sit behind a desk for an eight-hour

period due to aching, throbbing and shooting pain.  R. at 192.  However, Plaintiff stated that she

could probably perform her job as a school bus aide for four hours a day.[1]  Plaintiff also testified

that she had worked as a cashier, but stopped because she could not stand or lift objects for an

extended period of time.  R. at 193.  Plaintiff further stated that she could only walk one block,

stand for two or three minutes, or sit for five to ten minutes without any physical problems.  R. at

196.  Plaintiff testified that she could carry a half gallon of milk.  R. at 197.  She also testified

that she went to physical therapy three times a week for ten minutes each visit.  R. at 197-198.

Upon examination by her attorney, Plaintiff stated that her pain level, on a scale of 1-10,

with 10 being the worst, was a 10 all the time.  R. at 201.  Plaintiff confirmed that constant pain

left her depressed, emotional and disinterested in many aspects of life.  R. at 203-204.  Plaintiff

stated that she experienced feelings of guilt and worthlessness, and had trouble sleeping.  R. at

204.  Plaintiff claimed that she sometimes heard voices telling her "to give up."  R. at 204.  She

also stated that her feelings of depression and anxiety affected her ability to work for a long

---

[1] R. at 192.  Plaintiff's position as a "school bus aide" involved sitting on the bus and
monitoring special education students.  R. at 191.  Plaintiff was not required to move children or
wheelchairs.  R. at 191.

period of time, and that she became nervous around groups of people.  R. at 205-206.

Sonya Mocarski, a vocational expert, also testified at the hearing about the types of work Plaintiff could perform in light of her occupational impairments.  First, Mocarski determined the exertional level and skill level of Plaintiff's past relevant work as a home health aide, cashier, and school bus aide.  Mocarski defined "home health aide" as a "medium semiskilled" position, and the cashier and school bus aide positions as "light duty unskilled."  R. at 208.  Mocarski then listed a number of "sedentary unskilled"[2] positions existing in significant numbers in the national economy.  R. at 208-209.  These positions included assembler, order clerk, parking attendant, and food checker.  R. at 208-209.  Mocarski testified that Plaintiff's Global Assessment of Functioning ("GAF") rating of 70 suggested mild symptoms, including "depressed mood, mild insomnia, or some difficulty in social, occupational, or school functioning."  R. at 209.  Mocarski stated that this GAF score would not preclude Plaintiff's performance of the various "sedentary unskilled" jobs.  R. at 209-210.

The ALJ issued a decision on August 27, 2001, in which he determined that Plaintiff was not disabled and was not entitled to disability benefits.  See R. at 16-25.  In his written opinion, the ALJ made the following findings:

(1)     The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

(2)     The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

(3)     The claimant has an impairment or a combination of impairments considered

---

[2] "Sedentary" work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).

3

"severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

(4)    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(5)    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

(6)    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR §§ 404.1527 and 416.927).

(7)    The claimant has the following residual functional capacity: lift and carry up to twenty pounds occasionally and ten pounds frequently, sit for six hours and stand and/or walk for three hours in an eight hour workday.

(8)    The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1565 and 416.965).

(9)    The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

(10)    The claimant has "a limited education" (20 CFR §§ 404.1564 and 416.964).

(11)    The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

(12)    The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

(13)    Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.24 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.  Examples of such jobs include work as assembler, unskilled - sedentary (5,000 in New Jersey); order clerk, this job has a sit/stand option, sedentary - unskilled (14,000 in New Jersey) and parking lot attendant, this job has a sit/stand option, sedentary - unskilled (10,000 in New Jersey).

(14)    The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

4

R. at 24-25.  Plaintiff requested that the Appeals Council review the Hearing Decision on

September 12, 2001.  R. at 11-12.  The Appeals Council denied the request for review of the

ALJ's decision on May 11, 2004.  R. at 3-6.  Plaintiff then filed the instant civil action with this

Court, seeking review of the Commissioner's denial of disability benefits.

## II.   DISCUSSION

### A.  Standard Of Review For Social Security Appeals

It is well settled that the Commissioner's decisions as to questions of fact are conclusive

before a reviewing court if they are supported by "substantial evidence in the record."  42 U.S.C.

§ 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  "Substantial evidence" means more

than "a mere scintilla."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v.

Shalala, 55 F.3d 900, 901 (3d Cir. 1995)).  "It means such relevant evidence as a reasonable

mind might accept as adequate."  Id.  If the ALJ's findings of fact are supported by substantial

evidence, this Court is bound by those findings, "even if [it] would have decided the factual

inquiry differently."  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Hartranft v. Apfel,

181 F.3d 358, 360 (3d Cir. 1999).

The Third Circuit has made it clear "that determination of the existence *vel non* of

substantial evidence is *not* merely a quantitative exercise.  A single piece of evidence will not

satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by

countervailing evidence."  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983) (emphasis in

original).  In reaching a conclusion that a claimant is capable of performing work, the ALJ must

analyze all the evidence and explain the weight the ALJ has given to probative exhibits.  Gober

v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (internal citation omitted).  As the Third Circuit

has held, access to the ALJ's reasoning is indeed essential to a meaningful court review. Fargnoli, 247 F.3d at 42.  Nevertheless, the district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993).

 B.  Standard For Awarding Benefits

 A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirements.  42 U.S.C. § 423 (2005).  A plaintiff must also demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  Id. § 423(d)(1)(A).  An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A).

 Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability.  20 C.F.R. § 404.1520 (2005).  In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity."  Id. § 404.1520(a).  If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied.  Id. § 404.1520(b).  If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments."  Id. § 404.1520(c).  A claimant who does not have a "severe impairment" is not disabled.  Id.  Third, if the impairment is found to be severe,

the ALJ determines whether the impairment meets or is equal to those impairments listed in 20

C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing").  If so, the claimant is conclusively presumed to be

disabled, and the evaluation ends.  Id. § 404.1520(d).

        If it is determined that the impairment does not meet or equal a listed impairment, the

ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities

despite limitations imposed by an impairment ("residual functional capacity," or "RFC"); and (2)

whether those limitations prevent the claimant from returning to work performed in the past

("past relevant work").  Id. § 404.1520(e).  If the claimant is found capable of performing his

previous work, the claimant is not disabled.  Id. § 404.1520(f).  If the claimant is no longer able

to perform his prior line of work, the evaluation must continue to the last step.  The fifth step

requires a determination of whether the claimant is capable of adjusting to other work available

in the national economy.  Id. § 404.1520(g)(1).  The ALJ must consider the RFC assessment,

together with claimant's age, education, and past work experience.  Id.  Thus, entitlement to

benefits turns on a finding that the claimant is incapable of performing her past work or some

other type of work in the national economy because of her impairments.

        The application of these standards involves shifting burdens of proof.  The claimant has

the burden of demonstrating both steps one and two, i.e., an absence of present employment and

the existence of a medically severe impairment.  Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5

(1987).  If the claimant is unable to meet this burden, the process ends, and the claimant does not

receive benefits.  Id.  If the claimant carries these burdens and demonstrates that the impairments

meet or equal those within the Listing, claimant has satisfied her burden of proof and is

automatically entitled to benefits.  Id.  If the claimant is not conclusively disabled under the

criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step

four that the impairment prevents her from performing her past work." Id.; see also Andrade v.

Sec'y of Health and Human Serv., 985 F.2d 1045, 1050 (10th Cir. 1993). Thus, it is the

claimant's duty to offer evidence of the physical and mental demands of past work and explain

why she is unable to perform such work. If the claimant meets this burden, the burden of proof

then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work

available in the national economy." Bowen, 482 U.S. at 146-47 n.5. The step five analysis can

be quite fact specific. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 126 (3d Cir. 2000).

C.  The Commissioner's Decision Will Be Affirmed Because There Is Substantial
Evidence To Support The ALJ's Findings

Under step one of the analysis, the ALJ found that Plaintiff had not engaged in

"substantial gainful activity" since the onset of her alleged disability on June 26, 1998. R. at 18;

see 20 C.F.R. § 404.1520(a). The ALJ then moved on to step two and determined that the

medical evidence indicated Plaintiff suffered from depression and musculoskeletal disorder. R.

at 18. This combination of impairments was sufficient to find that Plaintiff suffered from a

"severe impairment." R. at 18; 20 C.F.R. § 404.1520(c). In step three, however, the ALJ held

that Plaintiff's impairments did not meet those impairments in the Listing. R. at 18. Therefore,

Plaintiff was not conclusively presumed to be disabled and the ALJ proceeded to step four.[3]

At step four, the ALJ determined whether Plaintiff could perform the requirements of her

past relevant work. The ALJ considered numerous medical records and evaluated Plaintiff's

---

[3] Plaintiff does not contest the ALJ's conclusion that her impairments do not equal those
in the Listing. Because Plaintiff failed to carry the burden of establishing a presumption of
disability, and does not raise this issue on appeal, this Court's analysis will begin at step four.

subjective complaints to calculate Plaintiff's residual functional capacity.  The ALJ concluded

that Plaintiff could "lift and carry up to twenty pounds occasionally and ten pounds frequently, sit

for six hours and stand and/or walk for three hours in an eight hour workday."  R. at 22.  Based

on this calculation, the ALJ found that Plaintiff could not perform any of her past relevant work.

R. at 24.  However, in the final step, the ALJ considered the Plaintiff's age, education, and past

work experience; the RFC determination; the medical-vocational guidelines; and the testimony of

the vocational expert to find that Plaintiff could perform work available in the national economy.

R. at 23-24.  Accordingly, the ALJ found that Plaintiff was not disabled.  R. at 24.

Plaintiff contends that the required residual functional capacity analysis failed to account

for Plaintiff's severe depression.  See Plaintiff's Brief at 5-6.  Specifically, Plaintiff argues that

the ALJ's consideration of her depression as a "severe impairment" in step two is inconsistent

with the ALJ's failure to include any psychological limitation in the step four and five analysis.

Id. at 5.  Plaintiff relies on the findings made by the state agency psychological consultant on July

12, 1999.  See R. at 148-160.  The ALJ must consider the findings of state agency psychological

consultants because the Code of Federal Regulations considers them to be "highly qualified

physicians and psychologists who are also experts in Social Security disability evaluation."  20

C.F.R. § 404.1527(f)(2)(i); Social Security Ruling 96-6p.

The state agency consultant diagnosed post traumatic stress disorder approaching

remission.  R. at 152.  The consultant also found that the Plaintiff was moderately limited in her

ability to understand and remember detailed instructions; carry out detailed instructions; maintain

attention and concentration for extended periods; complete a normal workday and workweek;

respond appropriately to criticism from supervisors or changes in the work setting; and set

realistic goals or make plans independently of others.  R. at 157-158.  However, the consultant

found no symptoms resulting in a complete inability to function independently outside of the

home.  R. at 156.

Plaintiff asserts that these limitations should have been included in the ALJ's residual

functional capacity determination.  See Plaintiff's Brief at 6.  However, the state agency

consultant's summary conclusions and final assessment plainly show that such a step was not

necessary.  The consultant concluded that the psychological assessment "reflects no area of

marked limitation . . . [and] impairments are attributed to physical not psychological factors."  R.

at 159.  Because the state agency consultant refused to attribute Plaintiff's impairments to her

moderate psychological limitations, the ALJ acted reasonably in not including these limitations

in his RFC determination.

This Court finds additional evidence in the record to affirm the ALJ's decision not to

include any nonexertional, psychological limitations in his RFC determination.  The ALJ

considered examinations conducted by four professionals, beginning with Dr. Valerie Brooks-

Klein's ("Dr. Brooks-Klein") examination of Plaintiff on July 27, 1998.  Dr. Brooks-Klein noted

that Plaintiff was very sad, moody, irritable, and depressed.  R. at 123-124.  Plaintiff told Dr.

Brooks-Klein that she felt unmotivated and fatigued, and experienced frequent crying spells.  R.

at 124.  However, Dr. Brooks-Klein noted that there was no evidence of hallucinations or

delusions.  R. at 123.  She also noted that Plaintiff was alert and possessed sufficient

concentration, judgment, and insight.  R. at 123.  Dr. Brooks-Klein diagnosed post traumatic

stress disorder and recommended psychotherapy and weekly treatment.  R. at 124-125.  Dr.

Brooks-Klein also filed a report after Plaintiff's final visit on December 17, 1998.  She stated that

Plaintiff "was moderately depressed but there was no evidence of thought disorder, hallucinations or delusions."  R. at 128.

Dr. A. Donald Logue ("Dr. Logue") examined Plaintiff on June 17, 1999.  Dr. Logue stated that she was "an emotionally intense" woman whose "[a]ffective range and style was somewhat muted; this appeared to be part of the patient's personality."  R. at 146.  Dr. Logue also noted that Plaintiff attempted to slice her wrist when she was 15 and had had "passive death thoughts as recently, she claims, as four months ago."  R. at 146-147.  However, Dr. Logue noted that Plaintiff "presented this in an emotionally, fairly dramatic way."  R. at 147.  Dr. Logue found that Plaintiff was oriented to time, place, and person; went grocery shopping with her children; and saw girlfriends twice a month and her boyfriend twice a week.  R. at 146.  Dr. Logue assessed a GAF rating of 62, implying mild impairment in social, occupational and personal functioning.  R. at 147.

The ALJ also referred to an evaluation carried out by Plaintiff's physician at the Jean-Helios Bermingham Clinic.  At a March 9, 2000 visit, Plaintiff stated that she had felt relaxed after one year of treatment for depression.  R. at 161.  Plantiff felt healthy until January 2000, when she began to feel sad, anxious and fearful.  R. at 161.  Plaintiff said that she experienced panic attacks, palpitations, and sweaty palms.  R. at 161.  The Bermingham Clinic assessed a GAF rating of 70, which, like Dr. Logue's finding, implied a mild impairment in functioning.  R. at 162.  The ALJ specifically noted that Plaintiff never mentioned hearing voices in her March 2000 visit to the clinic.  R. at 20.

Finally, the ALJ referred to Dr. Alan S. Gordon's ("Dr. Gordon") examination of Plaintiff on July 20, 2000.  Although Plaintiff never claimed to hear voices at previous examinations, she

11

told Dr. Gordon that she started hearing voices and having visual hallucinations after the

accident.  R. at 20, 168.  Despite her claim that she ate only once or twice a day, Dr. Gordon

noted that Plaintiff was overweight and had gained 15 pounds in a year.  R. at 169.  Dr. Gordon

also cited a previous medical opinion that Plaintiff exhibited "extreme symptom magnification

tendencies."  R. at 165, 170.

After evaluating these medical opinions, the ALJ concluded that Plaintiff only had a

slight restriction in her ability to function in society and perform her daily activities.  R. at 21.

The ALJ noted a range of GAF ratings, from 62 to 70, that consistently implied a mild

impairment in social, occupational and personal functioning.  R. at 20.  The ALJ noted Plaintiff's

symptom magnification tendencies and inconsistent claims about hallucinations and hearing

voices.  R. at 20-21.  The ALJ also relied on consistent medical opinion that Plaintiff was alert

and oriented to person, place and time; possessed average intelligence; and could function

outside of the home.  In addition to these consistent medical findings, the ALJ considered

Plaintiff's subjective complaints and demeanor.  The ALJ found that:

> [C]laimant's statements concerning her impairments and their
> impact on her ability to work are not entirely credible in light of the
> claimant's own description of her activities and life style; the
> degree of medical treatment required; discrepancies between the
> claimant's assertion and information contained in the documentary
> reports . . . [and] the medical history.

R. at 21.  The ALJ's credibility determination, combined with the weight of the medical

evidence, constitutes substantial evidence in support of the ALJ's RFC determination and final

decision.  Specifically, the Court finds that the ALJ's decision not to include Plaintiff's moderate

psychological limitations in the RFC assessment was supported by substantial evidence in the

record.  Based on this assessment, the ALJ reasonably determined that Plaintiff could perform

work available in the national economy and thus was not disabled.  Because substantial evidence

in the record supports the final decision, this Court must deny Plaintiff's appeal.


**III.    CONCLUSION**

  For the reasons stated herein, Plaintiff's appeal is denied.  An appropriate form of order

accompanies this Memorandum Opinion.


            s/ Garrett E. Brown, Jr.
          GARRETT E. BROWN, JR., U.S.D.J.